IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JEFFERY LOWE,

             Plaintiff,             Case No. 1:18-cv-0027

v.                                        Judge Campbell
                                        Magistrate Judge Frensley
                                        JURY DEMAND

CALSONIC KANSEI NORTH
AMERICA, INC.

             Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

      Calsonic's motion ignores the plain language of the ADA and its implementing regulations: an impairment an impairment "lasting or expected to last fewer than six months can be substantially limiting" and an impairment "that is episodic or in remission is substantially limiting if it limits a major life activity;" major life activities include "standing or walking" or can simply affect a major bodily system such as the musculoskeletal system. 42 U.S.C. § 12102(2)(A), (4)(D); 29 C.F.R. § 1630.2(h)(1), (i)(1)(ii), (j)(1)(ix). Only by ignoring the plain language of the ADA and relying on non-binding case law that does the same, does Calsonic argue that Lowe was not disabled thereby avoiding its admitted dereliction of the mandatory interactive process. Calsonic further argues Lowe was not a "qualified individual with a disability" claiming he could not perform the essential functions of his job even though it considered another employee with similar physical limitations who performed Lowe's same exact job duties "disabled," and accommodated her. Holding on to a fundamental misunderstanding that the ADA only covers "permanent disabilities" Calsonic failed

to engage in an interactive process with Lowe at any time, despite Lowe making multiple requests to return to work after taking FMLA and extended medical leave for his disabilities.

In May 2016, Lowe took FMLA leave to due to both his chronic lower back pain and chronic right knee pain. While on FMLA, Lowe broke his foot in August 2016 and had to wait before he could undergo knee surgery. Lowe was fully released after his knee surgery in December 2016 and was subsequently released to return to light duty work from his foot doctor in February 2017. However, Calsonic refused to engage in an interactive process or accommodate him and forced him to remain off work until he exceeded its no-fault one-year medical leave of absence policy. Calsonic has no detailed accommodation policy, but it does have a modified duty policy. However, it is limited to workplace injuries or pregnancy. As a result of its refusal to consider Lowe's requests for accommodation or apply its modified duty policy to Lowe's disabilities, Calsonic ended Lowe's career for exceeding its no fault one-year medical leave of absence policy in violation of the ADA and in retaliation for taking FMLA and making requests for accommodation under the ADA.[1] For the reasons stated herein and incorporating the facts in Plaintiff's Motion for Summary Judgement (ECF 36); Calsonic's Motion should be Denied.

## I. FACTUAL BACKGROUND

To avoid repetition, Lowe incorporates by reference the factual background and supporting evidence filed in his Memorandum in Support of Summary Judgment. (Lowe MSJ Memo. ECF 36; Lowe MSJ ECF 35).

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

---

[1] Lowe also pled a claim for FMLA interference, he is voluntarily dismissing that claim.

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's function is not to determine the truth of the matters asserted, but whether there is a genuine issue for trial. *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). Summary judgment should not be imposed to deny a party an opportunity to present a meritorious claim or defense on his/her "day in court." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

### III. ARGUMENT

**A. Calsonic Violated the ADA**

Under the ADA, no covered entity shall discriminate against a qualified individual with a disability regarding the discharge of employees and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). A *prima facie* case under the ADA requires a plaintiff to establish that (1) he is a disabled person within the meaning of the ADA, (2) he is qualified, that is, with or without reasonable accommodation which he must describe, he is able to perform the essential functions of the job, and (3) the employer took adverse action because of his disability. *Ferrari v. Ford Motor Co.,* 826 F.3d 885, 891 (6th Cir. 2016).[2] "The burden of establishing a prima facie case is not onerous, but one easily met." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, (1981); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any

---

[2] Discrimination in violation the ADA based upon circumstantial evidence typically uses the *prima facie* case and burden shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011).

3

particular accommodation would impose an undue hardship on the employer." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996). "Claims premised on an employer's failure to offer reasonable accommodation necessarily involve direct evidence and the burden shifting approach is not applicable." [3] *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (applying the direct evidence standard for a failure to accommodate claim). Thus, where a case of ADA discrimination is premised on an allegation that an employer failed to accommodate or whether an employee was a "qualified individual with a disability" the three-factor direct evidence approach is appropriate. *Hostettler v. City of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018).

   **1. The Lowe Can Establish the Easily Met Prima Facie Case of Disability Discrimination**

Calsonic challenges the easily met prima facie burden that Lowe had a disability and that he was qualified for his position with or without reasonable accommodation. (MSJ Memo. ECF 33 p. 13- 15). The facts demonstrate Lowe indeed can establish the easily met burden.

   **a. Drawing all Inferences in Lowe's Favor, He Can Establish He Has a Disability as Defined by the ADA**

An individual is "disabled" under the ADA if he has "(A) a physical or mental impairment

---

[3] "Direct evidence is evidence that proves the existence of a fact without requiring any inferences" *i.e.* pretext. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted). Thus, the typical burden shifting approach does not apply in cases where defendant has admitted Plaintiff's disability was a factor, but instead whether the employee is "otherwise qualified," with or without reasonable accommodation, to perform the job, a factual dispute capable of resolution through traditional methods of proof. *Ferrari,* 826 F.3d at 891. In *Hildebrand v. Dollar Gen. Corp,* 2013 U.S. Dist. LEXIS 98974 *24 (M.D. Tenn. July 16, 2013) Judge Trauger observed a defendant inaccurately framed the pretext inquiry where the plaintiff argued the failure to accommodate caused her termination. Rather, the "relevant pretext inquiry is whether defendant's failure to accommodate [plaintiff's] disability was the 'but for' cause of the performance deficiencies for which she was terminated." In doing so, Judge Trauger stated "[t]his approach makes sense: it would frustrate the ADA's purposes if [defendant] could be insulated from liability for causing [plaintiff] to fail by refusing to accommodate [his] disability. [Defendant] has offered no persuasive authority for this self-defeating application of the *McDonnell Douglas* burden-shifting framework here." *Hildebrand,* 2013 U.S. Dist. LEXIS 9874 *24.

4

that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." § 12102(1). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "The definition of disability" under the ADA "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Likewise, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Hostettler*, 895 F.3d at 853; 29 C.F.R. § 1630.2(j)(1)(i). The primary concern of the ADA is "whether covered entities have complied with their obligations and whether discrimination has occurred," not whether an individual's impairment is a disability. 29 C.F.R. § 1630.2(j)(1)(iii). Pertinent major life activities include, but are not limited to, performing manual tasks, walking, standing, lifting, bending and working. 42 U.S.C. § 12102(2)(A). A major life activity can also be the operation of a major bodily function, including but not limited to, functions of the neurological (pain) or musculoskeletal. 42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(h)(1), (i)(1)(ii) (identifies musculoskeletal as a major bodily function that meets the definition of a major life activity). And "the term 'major' shall not be interpreted strictly to create a demanding standard." 29 C.F.R. § 1630.2(i)(2). The ADA does not require a specified minimum duration that an impairment must last in order to be substantially limiting, an impairment "lasting or expected to last fewer than six months can be substantially limiting." 29 C.F.R. 1630.2(j)(1)(ix).[4]

Calsonic out of hand refused to consider an accommodation for Lowe because it mistakenly believed his restrictions were only "temporary" and thus, his condition was not a permanent

---

[4] There is a "transitory and minor" exception to the "regarded as" analysis where "transitory" is defined as six months which is often confused in the analysis of an actual disability. 29 C.F.R. 1630.15(f). However, it is important to note that the six month "transitory" definition does not apply to the definition of "disability" when analyzing an actual disability (29 C.F.R. 1630.2(g)(1)(i)) or record of disability (29 C.F.R. 1630.2(g)(1)(ii)); thus, under those sections the effects of an impairment "lasting or expected to last fewer than six months *can* be "substantially limiting." 29 C.F.R. 1630.2(j)(1)(ix).

disability giving rise to protections under the ADA. (Tait Dep. 23, 27-28; Courtney Dep. 13). Calsonic's mistaken view of the ADA pre-dates the 2009 Amendments to the ADA and its implementing regulations which specifically contemplate that the Act covers episodic impairments and impairments where the effects can last less than six months, but which can be substantially limiting. 42 U.S.C. § (4)(D); 29 C.F.R. 1630.2(j)(1)(vii), (ix). Lowe's knee problems were chronic and had been a problem for him for years, even requiring prior FMLA. (Tait Dep. 9-10, Ex. 52; Lowe Dep. 40-41, 45, Ex. 5). In 2016, when his knee problems again required FMLA, his physician estimated that he would need physical therapy, have flare-ups approximately two times per week, and his ability to engage in prolonged standing and walking would be affected. He was ultimately required to have surgery and he was off work from May to December, approximately eight months due to his knee. (Lowe Dep. 65, Ex. 15 p. 133-134, Ex. 17, Ex. 18 p. 568-569, Ex. 27; Tait Dep. Ex. 54). Further, Lowe's foot injury required treatment, including a cast, boot, walking cast and injections; he was precluded from any work for approximately six months, had light duty restrictions related to his ability to stand for approximately five months, resulting in over eleven months out of work (because Calsonic refused to consider light duty); and he was on FMLA and later received long term disability insurance benefits related to his foot injury. (Lowe Dep. 61, 73, 76, Ex. 21, 25, 26, 29, 30, 31, 44; Tait Dep. Ex. 54, 59-65).

Because Lowe's major life activities of walking, standing, working and his musculoskeletal system were affected by his knee and later his foot injury, he had a disability as defined by the ADA, Calsonic's argument to the contrary defies the plain language of the statue. 42 U.S.C. § 12102(2)(A), (B); 29 C.F.R. § 1630.2(h)(1), (i)(1)(ii). *See e.g., Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330, 333 (4th Cir. 2014) (impairment "substantially limited" plaintiff's ability to walk when accident left [the plaintiff] unable to walk for seven months and that without surgery,

pain medication, and physical therapy, he 'likely' would have been unable to walk for far longer,"); *Burnell v. Tealwood Care Ctrs., Inc*., 2018 U.S. Dist. LEXIS 152351 * (D. Minn. July 10, 2018) (broken ankle was a disability that limited major life activities of walking, standing and lifting); *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1065, 1065 n.6 (W.D. Ark. 2017) (finding jury question regarding whether broken arm constituted a disability by substantially limiting major life activity); *Consedine v. Willimansett E. SNF*, 213 F. Supp. 3d 253, 261 (D. Mass. 2016) (finding a fact question regarding whether plaintiff was disabled when she fractured her right leg because she had "significant limitations" in the activities of walking and lifting); *Moore v. Jackson Cnty. Bd. of Educ.*, 979 F. Supp. 2d 1251 (N.D. Ala. 2013) (broken ankle constitutes a disability).

Calsonic also contends that Lowe did not have a disability at the time of his termination on June 9, 2017 relying on *Kocsis*. (MSJ Memo. ECF 33 pp.13-14). This is an incorrect statement of law and fact. First, the cite relied on in *Kocsis* has been superseded by the ADA Amendments Act which significantly expanded the definition of "disability" and recognized impairments that are episodic or in remission, like Lowe's chronic knee and back conditions and his prolonged foot injury, are disabilities under the ADA.[5] Lowe Dep. Ex. 18, p. 569, Ex. 19, 21, 29-31. 42 U.S.C. § 12102(4)(D); 29 C.F.R. 1630.2(j)(1)(vii), (ix). See *Jones v. Honda Mfg.,* 2015 U.S. Dist. LEXIS 28682 *34-35 (S.D. Ohio Mar. 9, 2015) (notes much of the reasoning in *Kocsis* has been superseded by statute). Further, *Summers v. Altarum Inst., Corp*., 740 F.3d 325, 332-333 (4th Cir. 2014), misleadingly cited by Calsonic supports Lowe's argument that his injuries were disabilities as defined by the plain language of the statute. (MSJ Memo. P. 14). In *Summers*, the court of

---

[5] Calsonic also cites *Sasser v. ABF Freight, Inc*. 219 F.Supp. 3d 701, 707 (M.D. Tenn. 2016) and *Gleason v. Food City 654*, 2015 U.S. Dist. LEXIS 52558 (E.D. Tenn. Apr. 22, 2015), both of these cases are classic "low hanging fruit" that were brought by pro se plaintiffs against large companies represented by sophisticated L&E firms who moved for dismissal and cited *Kocsis* and other pre-Amendment cases without meaningful analysis of the ADAAA or the pertinent statutory provisions. These cases are unpersuasive for this reason.

appeals *reversed* a dismissal that relied on pre-ADAAA law that misapplied the disability analysis where the plaintiff alleged a severe knee injury and broken ankle that prevented him from walking for at least seven months. *Id*. Additionally, the non-binding Mississippi district court case, *Clark v. Boyd Tunica, Inc.*, 2016 U.S. Dist. LEXIS 25223 *10-11 (N.D. Miss. Mar. 1, 2016) (internal citations omitted), cited by Calsonic relies on "examples" of non-disabling conditions including "broken limbs…appendicitis" but, *Clark* relies on a direct quote that simply does not exist post-Amendment. (MSJ Memo. p. 13). 29 C.F.R. §1620(j). Indeed, the only reference to "broken limbs, sprained joints, concussions appendicitis and influenza" being excluded is found in likewise outdated pre-ADAAA case notes and outdated EEOC Compliance Manual Section 902. The EEOC specifically notes on its website that this manual has been removed from the website because the analysis has been superseded by the ADAAA. https://www.eeoc.gov/policy/docs/902cm.html. Second, Calsonic's time frame is off. Even though Lowe was terminated on June 9, 2017, he was not released by his doctor for a forty-hour workweek until June 13, 2017, and even then, he was limited to no overtime for a month. (Tait Dep. Ex. 64; Lowe Dep. Ex. 44). Thus, Calsonic's argument is unpersuasive and flies in the face of the plain language of the <u>current</u> statute and regulations.

### b. Lowe Was Qualified to Perform the Essential Functions of His Job with Reasonable Accommodations

To be "qualified" for the job, the employee shows he can perform the "essential functions" of the job, with or without accommodation. 42 U.S.C. § 12111(8); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004). Generally, the "essential functions" of a job are the functions that are "fundamental," as opposed to marginal, such that a job would be "fundamentally altered" if such a function was removed. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 762 (6th Cir. 2015) (en banc).

In determining which functions qualify as essential, an employer's judgment and the employee's job description prior to litigation are both relevant considerations. *Ford*, 782 F.3d at 761-62; 42 U.S.C. § 12111(8). However, "written job descriptions are...not dispositive." *Rorrer v. City of Stow,* 743 F.3d 1025, 1040 (6th Cir. 2014). Similarly, "courts are not 'required to give deference to [the employer's] judgment regarding what the essential functions of the position [are]' when the record suggests that there" is evidence to the contrary or when evidence is "mixed." *Rorrer,* 743 F.3d at 1039, 1040, 1042 (quoting *Keith v. Cty. of Oakland*, 703 F.3d 918, 925-26 (6th Cir. 2013)). Such countervailing evidence may include "[t]he amount of time spent on the job performing the function[,]" "[t]he consequences of not...perform[ing] the function[,]" or the "work experience" of past incumbents in the same job and current employees in similar jobs. 29 C.F.R. § 1630.2(n); 42 U.S.C. § 12116.

At a minimum, a position's essential job functions "should reflect the actual functioning and circumstances of the particular enterprise involved." *Hall*, 857 F.2d at 1079. The Court must "conduct a fact-specific inquiry into...how the job is actually performed in practice." *Henschel v. Clare Cty. Road Comm'n*, 737 F.3d 1017, 1023 (6th Cir. 2013) (quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)). "The inquiry into whether a function is essential," and whether an employee can *perform* the essential functions in light of [his] disability, "is highly fact specific." *See Mosby-Meachem*, 883 F.3d at 605; *Hoskins*, 227 F.3d at 726; *Rorrer*, 743 F.3d at 1039. Whether a job function is essential "is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Rorrer,* 743 F.3d at 1039.

Here, the facts demonstrate Lowe establishes the qualified element of the easily met prima facie case by: 1) another employee, Culbertson, had the exact same job duties and nearly the exact same restrictions (if not more stringent) as Lowe and was accommodated; and 2) his job was being

9

covered by another provisional/temporary employee while Calsonic refused to allow him to work. (Culbertson Dep. 31 (Culbertson was allowed to sit at the same job as Lowe's for over twelve years); Courtney Dep. 35; Monks Dep. 12-13; Tait Dep. 17-18, Ex. 56). 29 C.F.R. § 1630.2(n)(3)(vi), (vii) (Evidence of whether a particular function is essential includes the work experience of current or past incumbents in the job or similar jobs). Further, additional medical leave can constitute a reasonable accommodation. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir.1998); *Coffman v. R.J. Young*, 871 F.2d 703 (M.D. Tenn. 2012)(Haynes) (summary judgment granted to plaintiff because undisputed evidence established plaintiff was qualified to perform essential functions and she could have returned to work with a reasonable accommodation of additional leave where her position was being covered by another employee); *Burress v. City of Franklin, Tenn.*, 809 F.Supp. 2d 795, 812 (M.D. Tenn. 2011) (evidence that plaintiff could have returned to work with a reasonable accommodation--including, a few additional days of leave time and then being permitted to return to work in a light-duty position was enough for a reasonable jury to conclude that he was a "qualified individual").

Moreover, Calsonic admitted it would have considered accommodating pregnant employees or ones injured on the job, but they failed to do so with Lowe only because his injury was not work related. (Monks Dep. 16; Courtney Dep. 10; Tait Dep. 23, 26; Fisher Dep. 13, 16). *See e.g. Young v. UPS*, 135 S.Ct. 1338, 1354 (2015) (a worker can establish her prima facie case [under the Pregnancy Discrimination Act] that the employer accommodated others "similar in their ability or inability to work"). The only people who considered whether Lowe was able to do his job were HR personnel based on an incorrect conclusion that his impairments were not a disability, but not based on observation, job duties, undue burden or discussions with Lowe's supervisors or Calsonic's own safety team. (Tait Dep. 24-25, 37-38, 43-44, Ex. 60, 65; Monks Dep. 18, 20, 22,

24; Wortham 10-11, 15; Fisher Dep. 11). Calsonic's failure to take into consideration the realities of Lowe's job were factors that should have been considered with respect to whether Lowe was qualified. *See Gunter v. Bemis Mfg., Inc.,* 2017 U.S. Dist. LEXIS 25653 *9 (E.D. Tenn. Aug. 30, 2017)(failure to observe plaintiff's ability in workplace is a factor for jury to determine whether plaintiff is qualified). Accordingly, the facts establish that Lowe was qualified to perform the essential functions of his job.

### c. Calsonic Terminated Lowe in Violation of the ADA

Lowe's separation notice stated "[f]ailure to return from 12 months of medical leave" as the reason for his discharge. (Lowe Dep. 83, Ex. 42). Calsonic unambiguously considered Lowe's disability in subjecting him to an adverse employment action. *See Coffman*, 871 F.2d at 714 (letter stating the employee was terminated due to long term disability was direct evidence of disability discrimination); *Burress,* 809 F.Supp. 2d at 815 (letter that plaintiff was receiving long-term disability benefits and terminating plaintiff for inability to perform essential functions of job was direct evidence of discrimination). Accordingly, Lowe has established his prima facie case.

### 2. Direct and Indirect Evidence of Undisputed Facts Demonstrate Lowe's Termination was Pretext for Unlawful Discrimination

Lowe's separation notice stated "[f]ailure to return from 12 months of medical leave" as the reason for his discharge. (Lowe Dep. 83, Ex. 42). This is direct evidence of ADA discrimination.[6] *Supra*, *Coffman*, *Burress.* Even if the traditional burden shifting, indirect evidence pretext analysis is undertaken, the conclusion is the same because Calsonic admitted its Modified Duty policy was not applied or considered with respect to Lowe because it was not inclusive of

---

[6] As set forth *supra*, because this case hinges on Calsonic's refusal to provide a disability, the direct evidence approach applies. *Hostettler v. City of Wooster*, 895 F.3d at 853.

individuals with disabilities.[7] Additionally, Culbertson's accommodations are further evidence of discrimination against Lowe. (Tait Dep. 27-28; Courtney Dep. 10, 28-29, 30, 35; Fisher Dep. 12; Wortham Dep. 16). Calsonic's failure to have any discussions to accommodate his request to return after his June 13, 2017 appointment is further evidence of pretext that his disability caused his termination. (Tait Dep. 34, 36, 42, Ex. 63, 65). These reasons demonstrate that his disability likely motivated his termination, not the expiration of Calsonic's unmonitored, no fault leave policy that provides no room for accommodation. Accordingly, a reasonable jury could conclude that Calsonic's reason for termination is pretext for unlawful discrimination.

### B. Calsonic Failed to Engage In an Interactive Conversation with Lowe in Violation of the ADA

The ADA "mandates an individualized inquiry in determining whether an [employee's] disability . . . disqualifies him from a particular position." *Keith,* 703 F.3d at 923. The individualized inquiry is an "interactive process" in which "both parties have a duty to participate in good faith." *Kleiber,* 485 F.3d at 871. Engaging in "the interactive process requires communication and good-faith exploration of possible accommodations." *Id.* The purpose is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id*. (citing 29 C.F.R. § 1630.2(o)(3)). "[F]ailure to engage in the interactive process is...an independent violation of the ADA[.]" *Rorrer*, 743 F.3d at 1041 (quoting *Keith*, 703 F.3d at 929).

---

[7] A plaintiff can establish pretext in three ways, showing that the employer's proffered reasons 1) are untrue, 2) did not actually motivate the termination, or 3) were insufficient to justify the action. *Geiger*, 579 F.3d at 622-623 (6th Cir. 2009). These three methods are not rigid and mutually exclusive, but rather they illustrate the types of evidence capable of raising a material fact of pretext. *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2013). Ultimately, when determining pretext, the court should employ a "commonsense inquiry" and ask: "did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)

In *Rorrer*, the Sixth Circuit determined that an employer's immediate conclusion that an employee was unfit to serve suggested bad faith and fell short of its obligations under the ADA to find an accommodation. *Rorrer,* 743 F.3d at 1045. In doing so, the court looked at the fact that the decision maker failed to inquire of co-workers about the specifics of employee job duties, opting for a predetermined conclusion that accommodation was not feasible. *Id*. Refusal to discuss reassignment is also suggestive of bad faith. *Id*. 1045-1046. Further, even if management explored reassignment but dismissed it because of a preconceived notion regarding what the essential functions of the position are, there is an indication that the employer lacked good faith. *Id*.

Lowe submitted notes requesting light or restricted duty. (Lowe Dep. 68-72, Ex. 30; Tait Dep. 22-23, 29, Ex. 59, 62, 62, 63, 64). Calsonic admitted it did not engage in an interactive conversation to discuss these requests. (Tait Dep. 44; Courtney Dep. 24, 26; Wortham Dep. 10-11, 14, 18). Lowe's disability insurance carrier also inquired about possible accommodations on Lowes' behalf, one request was ignored (Tait Dep. 24, Ex. 60 p. 621, 622); one request was rejected in approximately an hour and a half (Tait Dep. 25-26, Ex. 60); and another was rejected in three minutes. (Tait Dep. 37, Ex. 65). Lowe also requested leave a few days beyond the expiration of his MLOA to June 13, 2017, when he was scheduled to go back to the doctor and be released. (Tait Dep. 35, Ex. 64). Calsonic also refused to consider this request or engage in an interactive conversation for the extended leave. (Tait Dep. 38, 42). Calsonic made no efforts to talk to Lowe, examine Lowe's job duties, talk to his supervisor or safety or look for other jobs Lowe could have performed with his restrictions. (Tait Dep. 23-24, 27, 38, 44; Monks Dep. 18, 20, 22, 24). These summary rejections are suggestive of Calsonic's pre-determined conclusion and bad faith. *Rorrer,* 743 F.3d at 1045. Accordingly, a reasonable jury could conclude the facts establish Calsonic failed to engage in the required interactive process with Lowe.

### C. Calsonic Failed to Accommodate Lowe in Violation of the ADA

The ADA does not require an employee to use "magic words" like "accommodation" or even "disability" in order to fulfill his duty to request an accommodation. *Id.* at 449; *Leeds v. Potter*, 249 Fed. Appx. 442, 449 (6th Cir. 2007). *See Smith v. Henderson,* 376 F.3d 529, 535 (6th Cir. 2004) (submission of request to adhere to medical restrictions suffices as a request for accommodation that triggers interactive process). For example, a request "as straightforward as asking for continued employment" has been deemed a sufficient request for accommodation. *Hendricks-Robinson v. Excel Corp*, 154 F.3d 685, 694 (7th Cir. 1998); *Miller v. Illinois Dep't of Corr*, 107 F.3d 483, 487 (7th Cir. 1997) (an employee's statement that "I want to keep working for you—do you have any suggestions?" triggered the employer's obligation to determine whether it has some job the employee may be able to fill).

A reasonable accommodation may include "job restructuring [and] part-time or modified work schedules" 42 U.S.C. § 12111(9)(B). Job restructuring may entail "reallocating or redistributing nonessential, marginal functions." 29 C.F.R. app § 1630.2(o). "Shifting marginal duties to other employees who can easily perform them is a reasonable accommodation" depending on the facts. *Rorrer,* 743 F.3d at 1044. *See Camp v. BI-LO, LLC*, 662 F. App'x 357, 362-63 (6th Cir. 2016); *Gunter v. Bemis Co.*, 906 F.3d at 489; *see also* 29 C.F.R. §§ 1630.2(n)(1),(3). However, the ADA does not obligate an employer to restructure a job by eliminating or reallocating an essential function of the position, but again, this is based on the facts of a particular workplace. *Id*., *See Brickers v. Cleveland Bd of Educ.*, 145 F.3d 846 (6th Cir. 1998) (excusing the performance of some job duties for a temporary period may be a reasonable accommodation). As set forth more fully in detail *supra* in the "qualified" analysis, Calsonic failed to accommodate Lowe by allowing to return to work in modified duty or extend his medical leave

to a date certain, or even discuss the issue. (Tait Dep. 27-28; Courtney Dep. 10, 28-29; Fisher Dep. 12; Wortham Dep. 16). *See Cehrs v. Northeast Ohio Alzheimer's*, 155 F.3d 775, 782-783(6th Cir. 1998) (allowing a disabled employee to take leave, like other employees, can be a reasonable accommodation); *Coffman*, 871 F.2d at 703 (extension of medical leave to a date certain would have been a reasonable accommodation). For the same reasons Lowe articulated *supra* that he had a disability and was "qualified" apply with respect to this direct evidence accommodation analysis. Additionally, Culbertson's accommodation is proof positive that Lowe could have been accommodated in his restriction, and the continued use of Lowe's replacement by a provisional employee was also reasonable. (Culbertson Dep. 31; Tait Dep. 17-18, Ex. 56). Thus, a reasonable jury could conclude Calsonic failed to accommodate Lowe.

Alternatively, Calsonic claims it did provide Lowe an accommodation of leave to June 9, 2017. (MSJ Memo pp. 23). This assertion conflicts with Calsonic's HR personnel's testimony where they emphatically stated he was not disabled and it did not offer him any accommodation. (Tait Dep. 27-28, 34, 38, 44; Courtney Dep. 26-27). To now come back and claim they offered Lowe an accommodation that directly conflicts prior testimony is an issue fact that is to be drawn in Lowe's favor and one which a reasonable jury could conclude was pretextual. Furthermore, assuming arguendo their assertion has any merit, it still fails to answer the question why did they refuse to consider the additional 4 days' leave when Lowe told them he would return to his doctor on June 13 and expected to be released on that date. (Tait Dep. 36-38, Ex. 65). Calsonic's assertion they offered an accommodation is meritless.

1. **Calsonic Violated the ADA When it Failed to Apply Its Modified Duty Policy**

Allowing Lowe the same rights and privileges afforded employee's with worker's compensation injuries or pregnant employees was a reasonable accommodation. *See Severson v.*

*Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) *cert. denied*, 138 S. Ct. 1441 (2018) (an employer need not create a light duty position for a non-occupationally injured employee with a disability as a reasonable accommodation unless it has a policy of creating light-duty positions for employees who are occupationally injured, then that same benefit ordinarily must be extended to an employee with a disability who is not occupationally injured unless the company can show undue hardship). Further, the accommodation of Lowe's co-worker, Culbertson, who was doing the same job indicates that allowing Lowe to sit for part of his shift was a reasonable accommodation. *See generally Bullard v. FedEx Freight, Inc.,* 218 F.Supp. 3d 608, 618 (M.D. Tenn. 2016)(Crenshaw) (consideration of evidence that employee was doing their job without affecting job performance prior to denial of request for accommodation). Lowe requested to return to work on modified duty beginning February 2017 and to have leave to a date certain beyond Calsonic's one-year MLOA policy. (Lowe Dep. 68, Ex. 30; Tait Dep. 22-23, Ex. 59). Lowe's requests were reasonable. 29 C.F.R. § 1630.2(o)(2)(ii) (modification of a policy can be a reasonable accommodation). Thus, because Calsonic refused to consider Lowe's accommodation requests in the same manner it does work-place injuries or pregnancies, it violated the ADA.

2. **Calsonic's One Year Medical Leave of Absence Policy Violates the ADA Because it Ignores the ADA's Mandate to Engage in An Interactive Conversation to Determine if Accommodation is Reasonable**

Calsonic claims extension of its MLOA policy [to a date certain] was not a reasonable accommodation because of the fixed terms of the policy. (MSJ Memo. 22-23). The EEOC has taken the position that fixed or "no fault" leave policies violate the ADA. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question 17 (Oct. 17, 2002). See, also, *Dee v. Board of Regents, Univ. of Georgia*, No. CV 114-176 (S.D. Ga. March 30, 2016) (a no-fault leave policy must be modified only when

the employee can show extended leave would constitute a reasonable accommodation); *Salem v. Houston Methodist Hospital,* No. 4:14-1802, n.5 (S.D. Tex. Oct. 30, 2015) (Citing the EEOC Enforcement Guidance, the court finds that an employer must modify a no-fault leave policy to provide additional leave unless the employer can show: 1) there is another effective accommodation that would allow the employee to perform the essential functions of the job, or 2) undue hardship. Modifying workplace policies, including leave policies, is a type of reasonable accommodation). The Supreme Court has held that just because an employer's policy is "neutral" does not prevent it from being considered discriminatory in its application. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 398 (2002), citing *Garcia-Ayala v. Lederle Perenterals, Inc*., 212 F.3d 638, 648 (1st Cir. 2000) (requiring leave beyond the amount allowed under the company's leave policy). *Accord Holly v. Clairson Industries, L.L.C*., 492 F.3d 1247, 1263 (11th Cir. 2007); *Gibson v. Lafayette Manor, Inc.*, 2007 WL 951473, at *7 (W.D. Pa. Mar. 27, 2007) (similar); *Robinson v. Neodata Services, Inc*., 94 F.3d 499, 502 (8th Cir. 1996) (describing employer's offer of leave in excess of policy as a reasonable accommodation). Further, an extension of an extended leave to a fixed time can be a reasonable accommodation, of course the key to this is the interactive process, which Calsonic refused to engage in. *Coffman*, 871 F.2d at 703 (as a matter of law extension of extended medical leave to a date certain would have been a reasonable accommodation). Because Calsonic's inflexible MLOA policy fails to take into account the particular circumstances of its employees with disabilities it violates the ADA's mandate to engage in a good faith interactive conversation. Because the MLOA policy was the basis for Lowe's termination, it was discriminatory in application and violated Lowe's rights under the ADA.

    **D.**    **Calsonic Is Unable to Demonstrate that Allowing Lowe to Return to Work After His Medical Leave of Absence Was an Undue Hardship**

Calsonic admitted that it performed no undue hardship analysis. (Courtney Dep. 27). *Johnson*, 443 F. App'x at 982-83 (it is the employer's burden to demonstrate that any particular accommodation would impose an undue hardship on the employer). Thus, it is undisputed it would not have been an undue hardship on Calsonic to accommodate Lowe since it did not take into consideration the analysis.

### E. Calsonic Retaliated Against Lowe in Violation of the ADA and FMLA

Employers cannot use an employee's use of FMLA as a "negative factor" in employment actions "such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies." 29 C.F.R. § 825.220(c). *Hunter v. Valley View Local Schools*, 579 F.3d 688, 691-92 (6th Cir. 2009). "The phrase 'a negative factor' envisions that the challenged employment decision might also rest on other, permissible factors." *Id.* at 692. With respect to ADA retaliation, "the showing of a good-faith request for reasonable accommodations" is a "protected act" for purposes of an ADA retaliation claim. *Burress,* 809 F.Supp. 2d at 815 (citing *Baker v. Windsor Republic Doors,* 414 F. App'x 764, 776--77 & n.8 (6th Cir. 2011)). The analysis for ADA and FMLA retaliation claims premised on indirect evidence both use the *McDonnell/ Douglas* burden shifting paradigm, as analyzed *supra*.[8] *Id.*; *Edgar v. JAC Products, Inc.,* 443 F.3d 501, 508 (6th Cir. 2006).

---

[8] A prima facie case of FMLA retaliation, a plaintiff must show: (1) he was engaged in an activity the FMLA protects; (2) defendant knew he was exercising his FMLA rights; (3) defendant took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Jaszczyszyn v. Advantage Health Physician Network*, 504 Fed. App'x 440, 447 (6th Cir. 2012). Temporal proximity to protected conduct and an adverse employment action can establish causation. *Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir. 2007). "The burden of establishing a *prima facie* case of retaliation *is not onerous, but one easily met*.'" *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997).The plaintiff bears the burden of demonstrating that the given reason is pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804-06. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

Calsonic knew Lowe took FMLA and that he was terminated when Calsonic refused to discuss returning him to work, forcing him to exhaust his MLOA. (Lowe Dep. Ex. 15, 17, 18, 30; Tait Dep. 22-23, Ex. 54, 59). Lowe's request to return to work with restrictions was a request for accommodation, *i.e.*, protected conduct. *Baker,* 414 F. App'x at 776. Shortly before his MLOA was exhausted, Lowe notified Calsonic on May 11, 2017, that he had a specific date to return to his doctor and that he expected to be released to return thereafter, *i.e.*, a request for accommodation and more protected conduct. (Lowe Dep. 76, Tait Dep. 35-36, Ex. 31, 64). Finally, Lowe was terminated after engaging in the protected conduct of requesting accommodations and FMLA. (Id., Tait Dep. 40). This is direct evidence of retaliation. *See Coffman*, 871 F.2d at 718 (letter stating the employee was terminated due to long term disability and request for additional leave as accommodation was direct evidence of ADA retaliation); *Burress,* 809 F.Supp. 2d at 815-816 (acute temporal proximity between accommodation request and termination is evidence of ADA retaliation). Thus, the undisputed facts establish Lowe was retaliated against in violation of the ADA and FMLA.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Jeffrey Lowe respectfully requests that the Court DENY Calsonic's motion for summary judgment for ADA discrimination, failure to accommodate, and ADA and FMLA retaliation, and GRANT Lowe's Motion for Summary Judgment on the same claims and on his claim for failure to engage in the interactive process.

Respectfully submitted,

s/ *Heather Moore Collins*
Heather Moore Collins, BPR # 026099
Paige M. Lyle, BPR # 032959
Collins & Hunter PLLC
7000 Executive Center Drive

Building Two, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
paige@collinshunter.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that on this the <u>19th</u> day of July 2019, a copy of the foregoing has been furnished via the Court's electronic filing system, or other appropriate means, to:
Matthew C. Lonergan, John P. Rodgers, Bradley Arant Boult Cummings, 1600 Division Street, Suite 700, Nashville, TN 37203, jrodgers@bradley.com, mlonergran@bradley.com

    s/ *Heather Moore Collins*