# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

JEFFREY LOWE,      )
                        )
     **Plaintiff,**      )
                        )
**v.**      )      NO. 1:18-CV-00027
                        )
**CALSONICKANSEI NORTH AMERICA,**      )      **JUDGE CAMPBELL**
**INC,**      )      **MAGISTRATE JUDGE FRENSLEY**
                        )
     **Defendant.**      )

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 32), and Plaintiff's Motion for Summary Judgment (Doc. No. 35). Plaintiff and Defendant each filed a Response in Opposition (Doc. Nos. 39, 42) and Defendant filed a Reply. (Doc. No. 44). Plaintiff filed a Notice of Supplemental Authority in support of his motion (Doc. No. 56) and Defendant filed a Response (Doc. No. 57). For the reasons discussed below, Defendant's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

Defendant is an automotive parts manufacturer. (Doc. No. 40 ¶ 1). Defendant hired Plaintiff in 1989 as a temporary worker and promoted him in 1990 to a fulltime position working as a production technician at its plastics facility in Lewisburg, Tennessee. (Doc. No. 40 ¶ 2; Doc. No. 43 ¶ 1). During the time period pertinent to this case, Plaintiff worked on the airbag press at Defendant's factory. (Doc. No. 40 ¶ 46; Doc. No. 43 ¶ 2). In performing this job, Plaintiff ensured that airbag covers met Defendant's standards by trimming off excess plastic and weighing the parts. (Doc. No. 40 ¶ 46; Doc. No. 43 ¶ 2). Once satisfied with the quality, Plaintiff would place a sticker on the airbag cover and place it in a bin. (Doc. No. 40 ¶ 46; Doc. No. 43 ¶ 2).

Defendant maintains a family medical leave policy pursuant to the FMLA that provides up to 12 weeks of leave to eligible employees who suffered from a serious health condition. (Doc. No. 40 ¶ 6). Defendant also maintains a medical leave of absence policy that limits an employee to two separate leaves in a twelve-month period or a period equal to length of service, whichever is less. (Doc. No. 40 ¶ 7; Doc. No. 43 ¶ 4). Under Defendant's medical leave of absence policy, FMLA leave is also counted as a medical leave of absence. (Doc. No. 40 ¶ 7). Defendant uses a spreadsheet as a "tracker" to reference FMLA and medical leaves of absence used by employees, but there is no automatic alert of any kind when an employee's FMLA and/or medical leave of absence has exceeded their allotted time. (Doc. No. 43 ¶ 6). Defendant's policy is to administratively terminate employees who fail to return to work by the expiration of their medical leave of absence. (Doc. No. 43 ¶ 7).

Defendant has a modified duty policy that provides light duty work, modifies the duties of existing jobs, or reassigns employees to miscellaneous work tasks or functions. (Doc. No. 40 ¶¶ 8-9). However, Defendant only makes its modified duty policy available to pregnant employees and employees with temporary work restrictions arising from work-related injuries or illnesses. (Doc. No. 40 ¶¶ 8-9, 20; Doc. No. 43 ¶¶ 8-9). Defendant's safety team oversees the modified duty policy and is tasked with determining whether a workers work-related injury qualifies as a disability under the ADA. (Doc. No. 43 ¶ 46).

In May of 2016, Plaintiff took FMLA leave due to his chronic lower back pain and chronic right knee pain. (Doc. No. 40 ¶ 12; Doc. No. 43 ¶ 14). On or around August 1, 2016, while still out on FMLA leave, Plaintiff broke his left foot. (Doc. No. 40 ¶ 13; Doc. No. 43 ¶ 15). Plaintiff notified Marcie Tait in Defendant's human resources department of his recent foot injury and asked that Ms. Tait forward FMLA paperwork to the orthopedic doctor treating him for his foot so that

he could extend his leave to heal. (Doc. No. 40 ¶ 13; Doc. No. 43 ¶ 15). Plaintiff's FMLA leave was exhausted on or about August 15, 2016, and thereafter he remained off work under a medical leave of absence. (Doc. No. 40 ¶¶ 12, 14).

In September 2016, while still on leave recovering from both his foot and knee conditions, Plaintiff notified Defendant that he was being scheduled for knee surgery to assist with the issues that initially required him to seek FMLA leave. (Doc. No. 43 ¶ 18). Plaintiff had the knee surgery on October 13, 2016 and was released to return to work without restrictions by his knee surgeon on December 13, 2016. (Doc. No. 40 ¶¶ 15-16; Doc. No. 43 ¶¶ 20-21). Plaintiff's orthopedic doctor, Dr. Davidson, issued a note dated January 4, 2017, which indicated no work for four more weeks, and Plaintiff continued to be out on a medical leave of absence. (Doc. No. 40 ¶ 17).

On February 1, 2017, Dr. Davidson released Plaintiff to return to work with restrictions of "light duty, sitting job 50% of the time" for six weeks. (*See* Dr. Davidson's Work Status Note, Doc. No. 32-3, PageID # 364). If such work was not available, Dr. Davidson's note stated that Plaintiff was to remain off work. (*See* Dr. Davidson's Work Status Note dated February 1, 2017, Doc. No. 32-1, PageID # 286). Plaintiff emailed Dr. Davidson's note to Marcie Tait in Defendant's human resources department the same day. (Doc. No. 40 ¶ 18; Doc. No. 43 ¶ 22). In response, Ms. Tait informed Plaintiff that Defendant would not provide him with work that accommodated his doctor's restrictions because he was off work for a non-work-related injury and because his restrictions were temporary. (Doc. No. 40 ¶¶ 19-20). Ms. Tait did not know what specifically about Plaintiff's job he was unable to perform. (Doc. No. 43 ¶ 48). In denying Plaintiff's February 1, 2017 request to return to work with a 50% sitting accommodation, Defendant did not check to determine if a light duty or modified duty position was available. (Doc. No. 43 ¶ 25).

Plaintiff continued to attempt to return to work, submitting four more doctor's notes with the same sitting restrictions over the next three months. (Doc. No. 43 ¶ 26; Doc. No. 40 ¶¶ 21, 23; *see also* Dr. Davidson's Work Status Notes dated March 15, March 23, May 2, May 10, Doc. No. 32-1, PageID # 287-290). Defendant denied each of Plaintiff's requests to return to work with a 50% sitting accommodation on the same basis – that light duty work and modified duties were not available to employees with temporary non-work-related injuries under Defendant's modified duty policy. (Doc. No. 40 at ¶¶ 22, 24).

On May 11, 2017, Plaintiff emailed Ms. Tait advising her that he was to remain on the same work restrictions for one more month and that if no other complication arose he expected to be released to return to work at his next doctor's visit (June 13, 2017) with a 40 hour work restriction. (Doc. No. 40 ¶ 25; Doc. No. 43 ¶ 31). Plaintiff's 12-month maximum leave time under Defendant's medical leave of absence policy expired on or about May 22, 2017, as he had been out of work continuously since May 23, 2016, when he took FMLA leave for his back and right knee. (Doc. No. 40 ¶ 27; Doc. No. 43 ¶ 33).

On June 6, 2017, Plaintiff underwent emergency surgery on his appendix after suffering appendicitis. (Doc. No. 43 ¶ 34). Plaintiff notified Ms. Tait of his emergency surgery the next day, June 7, 2017, and informed her that he would be seen for a follow up fourteen days later. (Doc. No. 40 ¶ 28; Doc. No. 43 ¶ 34). Ms. Tait responded to Plaintiff by requesting that he submit his doctor's contact information so she could send the medical leave paperwork to his doctor. (Doc. No. 40 ¶ 30; *see also* Doc. No. 32-1 at PageID # 298). Ms. Tait forwarded the medical leave paperwork to Plaintiff's doctor and subsequently informed her immediate supervisor, Mary Beth Wortham, of the same. (Doc. No. 40 ¶ 31; *see also* Doc. No. 35-3 at PageID # 539).

After discussing Plaintiff's request to take medical leave for his appendix, Ms. Tait and Ms. Wortham checked the "tracker" and discovered that Plaintiff had exhausted the maximum 12 months' time available under Defendant's medical leave of absence policy. (Doc. No. 40 ¶ 31; *see also* Doc. No. 35-3 at PageID # 539; Doc. No. 35-5 at PageID # 557-59). Accordingly, Ms. Tait and Ms. Wortham called Ms. Wortham's supervisor, Terrin Courtney, to discuss Plaintiff's current situation and new requests. (Doc. No. 35-6 at PageID # 566-67). They determined that they were unable to approve Plaintiff's request for medical leave for his appendix because it was Plaintiff's third request for a medical leave of absence in a 12-month period, which exceeded the two permitted under Defendant's medical leave of absence policy. (Doc. No. 40 ¶¶ 32-33; *see also* Doc. No. 35-6 at PageID # 567). Additionally, Ms. Tait, Ms. Wortham, and Ms. Courtney determined that Plaintiff would have to be administratively terminated pursuant to Defendant's medical leave of absence policy because he had exhausted the maximum 12 months of leave time. (Doc. No. 40 ¶ 33).

Defendant terminated Plaintiff on June 9, 2017. (Doc. No. 40 ¶ 34; Doc. No. 43 ¶ 35). Plaintiff's separation notice stated "failure to return from 12 months of medical leave" as the reason for his discharge. (Doc. No. 43 ¶ 35). On June 13, 2017, Plaintiff was released from his 50% sitting restrictions by his orthopedic physician treating him for his foot. (Doc. No. 40 ¶ 35; Doc. No. 43 ¶ 36). Prior to terminating Plaintiff's employment on June 9, 2017, Defendant did not discuss returning Plaintiff to work with an accommodation with Plaintiff's supervisors or the safety management team. (Doc. No. 43 ¶ 45). Nor did Defendant have any discussions as to whether accommodating Plaintiff would cause the company an undue hardship or be cost prohibitive. (Doc. No. 43 ¶ 49). Nor did Defendant review Plaintiff's job duties or check to see if any other employees who worked in Plaintiff's area were permitted to sit during their shifts. (Doc. No. 43 ¶ 50).

Plaintiff filed the present action against Defendant on April 3, 2018, alleging violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* On June 21, 2019, Defendant and Plaintiff both moved for summary judgment on all claims. (Doc. Nos. 32, 35).[1]

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the

---

[1] Plaintiff asserts that he is voluntary dismissing his FMLA interference claim. *See* Doc. No. 39 at 2 n. 1; *see also* Doc. No. 42 at 22 n. 13 (noting that Plaintiff had abandoned any FMLA interference claim).

nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The standards ... for summary judgment do not change when, as here, 'both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## III.     ANALYSIS

### A.  ADA

The ADA was enacted in response to congressional findings highlighting "the continuing existence of unfair and unnecessary discrimination and prejudice [that] denies people with disabilities the opportunity to compete on an equal basis." 42 U.S.C. § 12101(a)(8). When the Act was amended in 2008, "Congress reasserted its goal of 'provid[ing] clear, strong, consistent, enforceable standards' to implement a 'comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 849 (6th Cir. 2018) (alteration in original) (quoting 42 U.S.C. § 12101(b)(1), (2)).

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Act's broad definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or

7

'indirect' evidence of discrimination." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 297 (6th Cir. 2019).

### 1. Failure to Accommodate

"Because not making reasonable accommodations is listed in the ADA's definition of disability discrimination, *see* 42 U.S.C. § 12112(b)(5)(A), claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Morrissey*, 946 F.3d at 298 (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (internal quotations omitted)). Courts in the Sixth Circuit apply the following direct evidence test to resolve ADA failure to accommodate claims:

> (1) The plaintiff bears the burden of establishing that he or she is disabled.
>
> (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.
>
> (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811-12 (6th Cir. 2020) (quoting *Kleiber*, 485 F.3d at 868-69).[2] Plaintiffs must also propose a reasonable accommodation to succeed. *Id.* at 812.

### A. Individual with a Disability

The ADA defines a disability, as relevant for purposes of the present case, as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. §

---

[2] This test "does not rely on the *McDonnell Douglas* burden-shifting framework." *Tchankpa*, 951 F.3d at 811.

12102(1)(A).[3] Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending ..., and working." § 12102(2)(A). The definitions of both a "disabled person" and "substantially limits" are to be construed broadly in favor of expansive coverage. *See Morrissey*, 946 F.3d at 299 (citing 42 U.S.C. § 12102(4)(A), (B); 29 CFR § 1630.2(j)(1)(i)). That is because the primary concern of the ADA is "whether covered entities have complied with their obligations and whether discrimination has occurred," not whether an individual's impairment is a disability. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(iii)).

To determine whether a disability substantially limits major life activities, courts are to compare the person claiming a disability to "most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "This is not a demanding standard, and in general, a plaintiff does not need to submit scientific, medical, or statistical proof to establish a substantial limitation." *Morrissey*, 946 F.3d at 299. (citing 29 C.F.R. § 1630.2(j)(v)) (internal citations omitted). "An impairment need not prevent, or significantly or severely restrict ... a major life activity" to be substantially limiting. *Hostettler*, 895 F.3d at 853-54 (quoting § 1630.2(j)(1)(ii)). Additionally, "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ix).

Plaintiff argues that he was disabled because he was substantially limited in his ability to walk, stand, and work for several months due to his foot injury and his knee. (Doc. No. 36 at 15 and Doc. No. 39 at 6). Accordingly, the question before the Court is whether Plaintiff submitted enough evidence to show that he was substantially limited in his ability to walk, stand, or work. *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300 (6th Cir. 2019).

---

[3] The definition also covers a "record of such impairment" and "being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1)(B) & (C).

9

Here, Plaintiff testified that his foot injury required treatment, including a cast, boot, walking cast and injections. (*See* Plaintiff's Deposition, Doc. No. 35-1 at PageID # 505-508). Plaintiff further testified that he was still off his broken foot in December of 2016, and that by May 10, 2017, his foot was still hurting and that he couldn't be on that foot all the time. (*See* Plaintiff's Deposition, Doc. No. 35-1 at PageID # 506-508). Additionally, Plaintiff presents evidence that he was precluded from any work for approximately six months, had light duty restrictions related to his ability to stand for approximately five months, resulting in over eleven months out of work; and he was on FMLA leave and later received long term disability insurance benefits related to his foot injury. (Doc. No. 36 at 15 and Doc. No. 39 at 6 (citing Lowe Dep. 61, 73, 76, Ex. 21, 25, 26, 29, 30, 31, 44; Tait Dep. Ex. 54, 59-65).

Defendant argues Plaintiff was not disabled within the meaning of the ADA because a broken foot simply does not constitute a disability and because Plaintiff's restrictions were temporary. (Doc. No. 33 at 17; Doc. No. 42 at 6-7). However, "the pertinent inquiry is not whether plaintiff's restrictions were labelled 'temporary' or 'permanent' or the precise length of time []he was under restrictions, but whether []he was substantially limited in a major life activity." *Mullenix v. Eastman Chem. Co.*, 237 F. Supp. 3d 695, 705 (E.D. Tenn. 2017). Defendant does not dispute that Plaintiff was substantially limited in his ability to stand, walk, or work for over six months while his foot was injured. *See* 42 U.S.C. § 12102(2). The Court concludes that Plaintiff has presented sufficient evidence to satisfy the first element of the prima facie case, that he was disabled within the meaning of the ADA. *See Hostettler v. Coll. of Wooster*, 895 F.3d 844, 854 (6th Cir. 2018); 29 C.F.R. § 1630.2(j)(1).

B.  "Otherwise Qualified"

Plaintiff argues that he was "otherwise qualified" for the production technician position with a proposed reasonable accommodation. The plaintiff bears the initial burden of showing "that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 419 (6th Cir. 2020) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)). The reasonableness of a proposed accommodation is a question of fact. *Fisher*, 951 F.3d at 419. In the present case, Plaintiff identified being allowed to sit down 50% of the time as an accommodation. Plaintiff argues this proposed accommodation was reasonable because Defendant allowed another employee who performed the same job as Plaintiff, Elaine Culbertson, to sit down 100% of the time to accommodate her knee problems for several years. (Doc. No. 36 at 16-18; Doc. No. 39 at 8-10; 16; Doc. No. 40 at 13).

Defendant argues that Ms. Culbertson was only able to sit down to perform her duties because she had a helper that carried the airbag covers to the bins. (Doc. No. 33 at 20; Doc. No. 42 at 19). Thus, Defendant contends that Plaintiff's proposed accommodation was not reasonable because having a co-worker perform an essential function is not a reasonable accommodation under the ADA. (Doc. No. 33 at 20-21). However, the evidence in the record does not suggest that Plaintiff requested that any of his duties be performed by someone else. Rather, Plaintiff asked to be allowed to sit for 50% of the time. The Court finds that Plaintiff has met his burden of showing that his proposed accommodation of being permitted to sit 50% of the time was reasonable on its face.

11

C.  Undue Hardship or Elimination an Essential Requirement

Because Plaintiff has met his burden of coming forward with sufficient evidence to establish that he was disabled and "otherwise qualified" for his position with a proposed reasonable accommodation, Defendant must show "either special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances, or that the proposed accommodation eliminates an essential job requirement." *Fisher*, 951 F.3d at 419 (internal quotations and citations omitted). Defendant does not argue that Plaintiff's proposed accommodation created an undue hardship. (*See* Doc. No. 42 at 19). Instead, Defendant argues that Plaintiff's proposed accommodation of being allowed to sit 50% of the time would prevent him from performing essential functions of his job.

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires. The term ... does not include the marginal functions of the position." *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (quoting 29 C.F.R. § 1630.2(n)(1)). A job function may be considered essential because (1) the position exists to perform the function, (2) a limited number of employees are available that can perform it, or (3) it is highly specialized. *Id*. (citing 29 C.F.R. § 1630.2(n)(2)). Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors, including "the employer's judgment as to what functions of a job are essential" and an employer's "written description" of the job. *See id*. (quoting 42 U.S.C. § 12111(8)). Courts are also to consider:

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the employee to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past employees in the job; and/or

12

(vii) The current work experience of employees in similar jobs.

*Rorrer*, 743 F.3d at 1039 (citing 29 C.F.R. § 1630.2(n)(3)(iii)-(vii)). "Although the employer's judgment receives some weight in this analysis it is not the end-all—*especially* when an employee puts forth competing evidence." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 855 (6th Cir. 2018) (internal citations omitted) (emphasis in original); *see also Rorrer* 743 F.3d at 1039 ("Written job descriptions are also not dispositive."). Whether a job function is essential "is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Rorrer*, 743 F.3d at 1039.

Defendant asserts that, according to the job description for the production technician position, standing was an essential function of the job that was required to be performed constantly and walking was an essential function that was required to be performed frequently. (Doc. No. 33 at 18-19 (citing Production Technician Position Job Description, Doc. No. 32-3, PageID# 361)). Defendant argues that, according to one of Plaintiff's former shift supervisors, the essential functions of standing and walking for an airbag press operator could not be performed with Plaintiff's proposed accommodation of sitting 50% of the time because Plaintiff had to get up and walk to a short distance to put completed airbag covers in a bin. (Doc. No. 33 at 5, 19). The former shift supervisor testified that the bins were probably around six feet away from the line. (Doc. No. 35-4, PageID # 545-546).

Plaintiff disputes that standing and walking were essential functions of his position, and again points to the evidence that Elaine Culbertson, who performed the same job as Plaintiff on a different shift, was permitted to use of a stool to sit down at her workstation for years to accommodate her knee problems. (Doc. No. 36 at 16-18, 22; Doc. No. 39 at 8-10, 15; Doc. No. 40

13

at 13). The Court also notes that Ms. Culbertson testified that the bins for completed airbag covers were only "three or four steps" from the line. (Doc. No. 35-8, PageID # 607).

Given the competing evidence, the Court concludes that there are genuine issues of material fact as to the essential functions of the production technician position. Consequently, there are also material questions of fact in dispute at to whether Defendant failed to provide Plaintiff with a reasonable accommodation. Accordingly, summary judgment on Plaintiff's failure to accommodate claim is **DENIED**.

2. Failure to Engage in Interactive Process

Plaintiff claims that Defendant failed to engage in the ADA's mandatory interactive process of determining how best to accommodate his disability. Once an employee requests an accommodation, the employer has a duty to engage in an interactive process. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018). Specifically, the employer must "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* (quoting *Mosby-Meachem*, 883 F.3d at 605–06 (citations omitted)); *see, e.g.*, *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428, 434 (6th Cir. 2018) ("Once Atkins requested this reasonable accommodation, the employer had a duty to explore the nature of the employee's limitations, if and how those limitations affected her work, and what types of accommodations could be made.") (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) and 29 C.F.R. § 1630.2(o)(3)). Employers must engage in a "good faith" process and an "individualized inquiry" to determine whether a reasonable accommodation can be made. *See Hostettler*, 895 F.3d at 857 (quoting *Rorrer*, 743 F.3d at 1045). If the interactive process was triggered but not successfully resolved, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Kleiber*, 485 F.3d at 871.

As discussed above, Plaintiff requested to return to work with an accommodation of sitting 50% of the time on February 1, March 15, March 23, May 2, and May 10. Defendant argues even if Plaintiff's requested accommodation of sitting 50% of the time was reasonable, it should be granted summary judgment because it offered Plaintiff an alternative reasonable accommodation in the form of medical leave. (Doc. No. 42 at 14). However, Plaintiff has presented evidence that Defendant did not engage in an interactive process, but rather had already determined what accommodation it was willing to offer before speaking with Plaintiff. Such evidence includes testimony from employees in Defendant's HR department that neither Ms. Tait nor her supervisors consulted with Plaintiff's supervisor about the requirements of Plaintiff's job or returning Plaintiff to work with an accommodation; observed someone performing Plaintiff's job functions to determine if Lowe could return to work with restrictions; consulted or notified the safety management team of Plaintiff's requests for accommodations; or checked to see if other employees who worked in Plaintiff's area had received sitting/standing accommodations. (Doc. No. 36 at 10 (citing Tait Dep. 23-24, 27, 38, 43, 44; Monks Dep. 18, 20, 22, 24; Wortham 10-11, 14, 18; Fisher Dep. 11; Courtney Dep. 24, 26, 35)).

Plaintiff also presents evidence that there was no discussion about whether accommodating Plaintiff would cause the company an undue hardship or the cost to Defendant. (Doc. No. 36 at 10 (citing Courtney Dep. 30)). Additionally, Plaintiff presents evidence that when his disability insurance carrier inquired about possible accommodations on Plaintiff's behalf, one request was ignored; one request was rejected in approximately an hour and a half; and another was rejected in three minutes. (Doc. No. 39 at 13 (citing Tait Dep. 24-26, 37-38, Ex. 60, 65)).

Given this evidence, a reasonably jury could conclude that Defendant did not engage in an interactive process. *See Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606

(6th Cir. 2018) (finding evidence that the defendant employer had already determined what accommodation it was willing to offer before ever speaking with the employee created question for jury as to whether employer actually engaged in an interactive process). Accordingly, summary judgment on this ground is **DENIED**.

    3.   <u>Discriminatory Discharge</u>

Plaintiff claims that Defendant discriminated against him by terminating him because of his disability, arguing that had Defendant provided him with a reasonable accommodation by allowing him to return to work with the sitting 50% of the time restriction, he would not have been forced to exhaust his medical leave, and would not have been terminated for failing to return to work after exhausting his medical leave. (*See* Doc. Nos. 36, 39). Defendant asserts that Plaintiff has no evidence that it terminated him because of his alleged disability and maintains that it had a legitimate, non-discriminatory reason for terminating Plaintiff, namely its medical leave of absence policy. (Doc. No. 32 at 2; Doc. No. 33 at 15-16; Doc. No. 42 at 11-13).

However, when, as in the present case, a discriminatory discharge claim is premised on an employer's failure to provide a reasonable accommodation, the Sixth Circuit has explained:

> A defendant may use a legitimate, nondiscriminatory rationale as a shield against *indirect or circumstantial* evidence of discrimination. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016). But a neutral policy is of no moment when an employee presents *direct* evidence of discrimination. *See id.* And failing to provide a protected employee a reasonable accommodation constitutes direct evidence of discrimination. *See Kleiber*, 485 F.3d at 868.

*Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428, 435 (6th Cir. 2018). This insight disposes of Defendant's argument that Plaintiff cannot prove its legitimate, non-discriminatory reason for terminating him – exhaustion of his 12-month medical leave of absence – was pretext for ADA discrimination. (Doc. No. 32 at 2; Doc. No. 33 at 15-16; Doc. No. 42 at 1,

12-13). A showing of pretext is only necessary where there is no direct evidence of discrimination, and Plaintiff's discriminatory discharge claim premised on a failure to accommodate necessarily involves direct evidence of discrimination. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997) ("The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both."). Moreover, the Court has already found that there are material questions of fact in dispute as to whether Defendant failed to provide reasonable accommodation. Consequently, there are also material questions of fact in dispute at to whether Defendant engaged in a discriminatory discharge resulting from that failure to accommodate. Accordingly, summary judgment on this ground is **DENIED**.

4. Retaliation

Plaintiff also claims that Defendant retaliated against him for exercising his rights under the ADA. Plaintiff argues that he engaged in protected conduct under the ADA when he requested to return to work with restrictions on February 1, March 15, March 23, May 2, and May 10, and also when he notified Defendant on May 11, 2017, shortly before his medical leave of absence was exhausted, that he had a specific date to return to his doctor and that he expected to be released to return thereafter. (Doc. No. 36 at 25; Doc. No. 39 at 19). Plaintiff asserts that his termination on June 9, 2017 after engaging in the foregoing protected conduct of requesting accommodations is indirect evidence of retaliation. (Doc. No. 36 at 25-26; Doc. No. 39 at 19).

Because Plaintiff relies on the foregoing indirect evidence of retaliation, this claim is analyzed under the *McDonnell Douglas* burden shifting approach. *See Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 396 (6th Cir. 2017). To establish a *prima facie* case of ADA retaliation under the indirect evidence test, a plaintiff must show that "(1) [he] engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action

17

against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Morrissey v. Laurel Health Care Co.,* 946 F.3d 292, 304 (6th Cir. 2019) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)). If the plaintiff does so, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Williams*, 847 F.3d at 396. The plaintiff must then show that the reason given by the employer was actually a pretext designed to mask retaliation. *Id*.

Establishing a *prima facie* case of retaliation is a "low hurdle." *Rorrer*, 743 F.3d at 1046. Nevertheless, Defendant contends that Plaintiff cannot establish the requisite causal connection. (Doc. No. 33 at 25). As Plaintiff's termination occurred at most a few weeks after his requests for accommodations in May 2017, the Court finds that the temporal proximity is sufficiently acute to permit an inference of a casual connection; thus, Plaintiff has met his minimal burden to put forth evidence permitting a reasonable inference of causation. *See Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 816 (M.D. Tenn. 2011); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) ("Temporal proximity to protected conduct and an adverse employment action can establish causation.").

Because Plaintiff has made the requisite showing for his *prima facie* case, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for terminating Plaintiff. *Williams*, 847 F.3d at 396. Defendant submits that its legitimate nondiscriminatory reason for terminating Plaintiff was its medical leave of absence policy. (Doc. No. 33 at 25). However, Plaintiff argues that Defendant's "no-fault" medical leave of absence policy was discriminatory in its application to him and violated his rights under the ADA because Defendant had failed to take into consideration the particular circumstances of his situation. (Doc. No. 36 at 23-24; Doc. No. 39 at 16-17). In Response, Defendant argues that its medical leave of absence policy does not violate

the ADA because it allows for an extension of medical leave as a reasonable accommodation. (Doc. No. 42 at 20-21). Both parties rely on an EEOC enforcement guideline from 2002 that provides, in part:

> May an employer apply a "no-fault" leave policy, under which employees are automatically terminated after they have been on leave for a certain period of time, to an employee with a disability who needs leave beyond the set period?
>
> No. If an employee with a disability needs additional unpaid leave as a reasonable accommodation, the employer must modify its "no-fault" leave policy to provide the employee with the additional leave, unless it can show that: (1) there is another effective accommodation that would enable the person to perform the essential functions of his/her position, or (2) granting additional leave would cause an undue hardship. Modifying workplace policies, including leave policies, is a form of reasonable accommodation.

EEOC, No. 915.002, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, 2002 WL 31994335, at *14-15 (Oct. 17, 2002) (footnote omitted).

Plaintiff also argues that his May 11, 2017 email to Marcie Tait, shortly before his medical leave of absence was exhausted, stating that he had a specific date to return to his doctor, June 13, 2017, and that he expected to be released to return thereafter was a request for additional medical leave beyond the expiration of his medical leave of absence but that Defendant refused to consider this request or engage in an interactive conversation for extended leave. (Doc. No. 36 at 20; Doc. No. 39 at 13). Defendant denies that Plaintiff's May 11 email constituted a request for an extension of his medical leave of absence as a reasonable accommodation. (Doc. No. 42 at 16-17).

The Court finds that there are material questions of fact in dispute as to whether Defendant's medical leave of absence policy was a legitimate nondiscriminatory reason for

Plaintiff's termination. Accordingly, summary judgment on Plaintiff's ADA retaliation claim is **DENIED**.

## B. FMLA

Plaintiff also claims that Defendant terminated him in retaliation for taking FMLA leave. (Doc. No. 39 at 2; Doc. No. 36 at 1). Plaintiff contends that employers cannot use an employee's use of FMLA as a "negative factor" in employment actions "such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies." (Doc. No. 39 at 18; Doc. No. 36 at 24 (quoting 29 C.F.R. § 825.220(c)).

A plaintiff can prove his FMLA retaliation claim using either direct or indirect evidence. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 432 (6th Cir. 2014). Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Laderach v. U–Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000)). If a plaintiff presents direct evidence of retaliation, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Id.* (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002)).

In the present case, the Court finds that Plaintiff has presented direct evidence of retaliation. It is undisputed that Defendant counted Plaintiff's use of FMLA leave in May, June, and July of 2016 against him under Defendant's 12-month maximum medical leave of absence policy. (Doc. No. 40 ¶ 33; *see also* Doc. No. 35-6 at PageID # 567). Ms. Tait, Ms. Wortham, and Ms. Courtney in Defendant's HR department all testified that Plaintiff's use of FMLA leave beginning in May of 2016 was considered as a factor in the determination to terminate Plaintiff's employment. (*See*

20

Doc. No. 35-3 at PageID # 539-40; Doc. No. 35-5 at PageID # 557-58; Doc. No. 35-6 at PageID # 566-70). Additionally, Ms. Tait created and signed a document stating:

> Jeffery Lowe was on a medical leave from 5/23/16 through 6/9/17. According to our policy, a team member is eligible for a medical leave of up to 12 months. If the team member is not able to return after the 12 months medical leave, the team member is terminated for failure to return from leave.

(Doc. No. 35-12 at PageID # 761). The Court finds the foregoing evidence does not require a factfinder to draw any inferences to conclude that Plaintiff's termination was motivated at least in part by his use of FMLA leave starting in May of 2016. *See Becknell v. Univ. of Kentucky*, 383 F. Supp. 3d 743, 761-62 (E.D. Ky. 2019) (deposition testimony of plaintiff's supervisor that plaintiff's decision to take FMLA leave was a factor in Defendant's decision to terminate her employment constituted direct evidence of FMLA retaliation). As such, the burden shifts to Defendant "to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Demyanovich*, 747 F.3d at 432.

Defendant generally contends that Plaintiff's "discharge had no relationship to the FMLA" but fails to present evidence that it would have terminated Plaintiff even he had not taken FMLA leave in May, June, and July of 2016. (Doc. No. 33 at 9-12; Doc. No. 42 at 22-23). Instead, Defendant argues it is entitled to summary judgment because Plaintiff failed to submit any evidence showing its legitimate, non-retaliatory reason for his termination – its medical leave of absence policy – was pretext for FMLA retaliation. (Doc. No. 33 at 9-12; Doc. No. 42 at 22-23).

However, a showing of pretext is only necessary where there is no direct evidence of retaliation, and as discussed above, Plaintiff has presented direct evidence from which a jury could conclude that he was terminated in retaliation for taking FMLA leave. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997) ("The direct evidence and circumstantial evidence

paths are mutually exclusive; a plaintiff need only prove one or the other, not both."). Additionally, the Court has already found that there are material questions of fact in dispute as to whether Defendant's medical leave of absence policy was a legitimate nondiscriminatory reason for Plaintiff's termination. Accordingly, summary judgment on Plaintiff's FMLA retaliation claim is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE