IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JEFFERY LOWE, | ) |
| Plaintiff, | ) Case No.: 1:18-CV-00027 |
| v. | ) JUDGE CAMPBELL |
| | ) MAGISTRATE JUDGE FRENSLEY |
| CALSONICKANSEI NORTH AMERICA, INC., | ) JURY DEMAND |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, TO ALTER OR AMEND THE JUDGMENT**

## I. INTRODUCTION

The jury's award of $176,628 in backpay to Plaintiff Jeffery Lowe ("Lowe") was without a legally sufficient basis in two respects. First, the jury awarded Lowe $176,628 in backpay based on Lowe's economic expert, Dr. Charles Baum's, report. (Pl.'s Ex. 39.) As Dr. Baum stated in his report and confirmed on the witness stand, Dr. Baum's estimate of economic damages did not factor in that Defendant CalsonicKansei North America, Inc.'s ("CKNA") Lewisburg facility where Lowe worked was shut down for 10 weeks because of COVID between the time period of March to May 2020, with eight of those 10 weeks being unpaid. As a result, the jury's backpay award included eight weeks of pay for a time that Lowe would not have been working for CKNA. This award put Lowe in a better position than he would have been had the unlawful discrimination (as the jury found but CKNA denies) not occurred. The goal of employment discrimination law is to put a plaintiff into the *same* position they would have been had the discrimination not occurred, not better. The jury's award put Lowe into a better position,

and it should be reduced by $6,219.44, using Dr. Baum's estimate of what Lowe would have earned at CKNA but for his termination.

Second, the jury's finding – implicit in the award of backpay at $176,628 – that Lowe's rejection of CKNA's unconditional offer to return to work was reasonable was without a legally sufficient evidentiary basis. Under the controlling rule from the United States Supreme Court, "<u>absent special circumstances</u>, the rejection of an employer's unconditional offer ends the accrual of potential backpay liability." *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 241 (1982) (emphasis added). There was no evidence of any "special circumstances" that would make Lowe's rejection of CKNA's offer reasonable. This Court has found as such already in ordering Lowe to be reinstated (and vacating the front pay award) by finding that Lowe is "qualified to perform the position from which he was terminated, there is no indication that his returning to work for Defendant would displace another employee, and there was no evidence of exceptional circumstances militating against reinstatement." (ECF No. 131.) The same holds true for why it was unreasonable for Lowe to reject CKNA's unconditional offer to return to work in June 2020. As a result, and as explained further below, the backpay period in this case should end as of June 9, 2020 when Lowe rejected CKNA's unconditional offer to return to work, and the jury's award of backpay should be further reduced because it included the time period of June 9, 2020 through August 27, 2021.

## II. STANDARD OF REVIEW

If the Court does not grant a Motion for Judgment as a Matter of Law during the trial,[1] a movant may "file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59" within 28-days of entry of the

---

[1] CKNA argued into the record its Motion for Judgment as a Matter of Law at the conclusion of Lowe's case-in-chief. CKNA then renewed its Motion at the conclusion of CKNA's proof. The Court took CKNA's Motion for Judgment as a Matter of Law under advisement.

4826-9150-1309.4
2
Case 1:18-cv-00027    Document 134    Filed 10/05/21    Page 2 of 16 PageID #: 1604

judgment. Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

A renewed motion for judgment as a matter of law may be granted "if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007).

In the alternative, CKNA moves the Court to alter or amend the judgment to reduce the award of backpay to Lowe to an amount consistent with the law pursuant to Federal Rule of Civil Procedure 59(e). The Court's decision concerning the granting or denial of a motion to alter or amend a judgment is reviewed under an abuse of discretion standard. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 511 (6th Cir. 2010).

### III. ARGUMENT

#### A. Award of Backpay Under the ADA Is an Equitable Remedy for the Court to Determine

The jury determined that CKNA violated the Americans with Disabilities Act ("ADA") but did not violate the Family and Medical Leave Act. (*See* ECF No. 131.) The ADA incorporates Title VII's remedies. *See Mosby-Meacham v. Memphis Light, Gas & Water Division*, 883 F.3d 595, 608 (6th Cir. 2018) ("The ADA incorporates the procedures and remedies available under Title VII, including backpay under 42 U.S.C. § 2000e-5(g).").

In interpreting Title VII, the United States Supreme Court has held that "backpay is not an automatic or mandatory remedy; . . . it is one which the courts 'may' invoke' in the exercise of their sound 'discretion [which] is equitable in nature." *See Ford Motor Co.*, 458 U.S. at 226 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415–16 (1975)). Stated more plainly,

under Title VII, the "power to award backpay is a discretionary power." *Id.* (quoting *Albemarle Paper Co.*, 422 U.S. at 447).

The Sixth Circuit has likewise held that backpay under Title VII is an equitable remedy for the Court to determine. *See Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 844 (6th Cir. 2011) (interpreting Title VII and finding that back pay is "specifically included with other equitable relief under Title VII," and "that the award of back pay is a matter within the court's equitable discretion under Title VII"). Therefore, since the award of backpay is an equitable remedy for the Court to determine in a Title VII case and thus an ADA case, this Court has the authority to reduce the jury's award of backpay. *See Albemarle Paper*, 422 U.S. at 416 (finding that Title VII's "scheme implicitly recognizes that there may be cases calling for one remedy but not another, and – owing to the structure of the federal judiciary – these choices are, of course, left in the first instance to the district courts"); *Dilley v. SuperValue, Inc.*, 296 F.3d 958, 965–66, 968 (10th Cir. 2002) (affirming district court's reduction of jury's backpay award in ADA case because award of backpay was left to the district court's "equitable determination").

**B. Jury Awarded Lowe Backpay for Period When CKNA Was Shut Down**

As the Supreme Court held in the *Ford Motor Company* case, "when unlawful discrimination does occur," Title VII aims "to make the victims of unlawful discrimination whole' by restoring them "so far as possible . . . to a position where they would have been were it not for the unlawful discrimination." 458 U.S. at 230 (quoting *Albemarle Paper*, 422 U.S. at 41).

In this case, the jury awarded backpay to Lowe in an amount of $176,628. (ECF No. 131.) This was the amount that Lowe's economic expert, Dr. Baum, recommended in his expert

report. (Pl.'s Ex. 39.) In his report, Dr. Baum stated as follows: "The first part of the estimate is the loss from the past, pre-trial period, which is June 9, 2017 (the date [of] Mr. Lowe's employment termination from CKNA) through August 27, 2021." (Pl.'s Ex. 39, ¶ 28.) Dr. Baum assumed that Lowe, "absent his employment termination, would have continued to have been employed for CKNA, earning $40,426.45 per year (in year-2016 dollars), which is Mr. Lowe's annually-prorated actual earnings in 2016 prior to taking leave from work on May 23, 2016.) (Pl.'s Ex. 39, ¶ 29.) Dr. Baum's $176,628 backpay estimate included a deduction for Lowe's replacement earnings since his employment with CKNA ended. (Pl.'s Ex. 39, ¶ 38.) Dr. Baum did not deduct the eight weeks that Lowe would have been without pay during CKNA's 10-week COVID-19 shutdown in March to May 2020, as Mary Beth Wortham testified about at trial. Only two of those 10 weeks were paid. Therefore, by accepting Dr. Baum's backpay number and crediting Lowe for working at CKNA when he would not have been, the jury's award of backpay put Lowe in a better position than he would have been had it not been for the unlawful discrimination. As a result, Lowe's backpay should be reduced by eight weeks of compensation.

Dr. Baum estimated that Lowe would have continued to earn $40,426.45 per year at CKNA had he not been terminated. (Pl.'s Ex. 39, ¶ 29.) Dividing $40,426.45 by 52 weeks equals approximately $777.43 per week. That number, $777.43, multiplied by the eight weeks without pay equals $6,219.44. Accordingly, this amount ($6,219.44) should be reduced from Lowe's backpay award.

### C. Lowe's Rejection of CKNA's Unconditional Offer to Return to Work Was Unreasonable, and Therefore Lowe's Backpay Period Ended on June 9, 2020

In a Title VII case, the United States Supreme Court in *Ford Motor Company* issued the binding rule regarding when a rejected unconditional offer to return to work tolls the accrual of backpay. In that case, the Supreme Court held as follows: "Absent special circumstances, the

rejection of an employer's unconditional offer ends the accrual of potential backpay liability." 458 U.S. at 241. Therefore, unless there were "special circumstances" present, a rejected unconditional offer to return to work tolls the accrual of backpay "as of the date the offer is rejected or expires." *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004).

In *Ford Motor Company*, the Supreme Court provided an example of what would constitute a "special circumstance" that would not toll the further accrual of backpay:

> If, for example, the claimant has been forced to move a great distance to find a replacement job, a rejection of the employer's offer might reflect the costs of relocation more than a judgment that the replacement job was superior, all things considered, to the defendant's job. In exceptional circumstances, the trial court, in the exercise of its sound discretion, could give weight to such factors when deciding whether backpay damages accrued after the rejection of an employer's offer should be awarded to the claimant.

*Id.* at 238 n.27.

As the Supreme Court held in *Ford Motor Company*, whether "special circumstances" exist is a matter for the "sound discretion" of the trial court. *Id.*; *Ernst v. City of Chicago*, 2018 WL 6725866, at *11 (N.D. Ill. Dec. 21, 2018) ("The *Ford* Court left the weighing of such circumstances to the 'sound discretion' of the trial court."); *Wilcox v. Stratton Lumber, Inc.*, 921 F. Supp. 837, 843 (D. Me. 1996) ("The Supreme Court left to the trial court's discretion the determination of when exceptional circumstances merit circumvention of the rule.").

One of the circumstances that could give rise to the "special circumstances" exception to the *Ford Motor Company* rule is if an employee reasonably rejected his former employer's unconditional offer to return to work. *See Reed v. Country Miss, Inc.*, 57 F.3d 1070 (Table), 1995 WL 348031, at *5 (6th Cir. June 8, 1995) (affirming district court's ruling that the plaintiff's rejection of the reinstatement offer "was not unreasonable"); *Toledo v. Nobel-Sysco, Inc.*, 892

F.2d 1481, 1493 (10th Cir. 1989) ("[A] rejected offer of reinstatement does not end ongoing backpay liability if the claimant's rejection of the offer was reasonable given the form of the offer and the circumstances surrounding it.").

In this case, the Court instructed the jury on this reasonableness issue. In its jury instructions, the Court stated as follows:

> Calsonic contends that it made Mr. Lowe an unconditional offer of reinstatement effective June 9, 2020. You must also determine whether Mr. Lowe acted reasonably in not accepting Calsonic's unconditional offer of reinstatement. If you find that Mr. Lowe did not act reasonably in not accepting Calsonic's offer of reinstatement, then you may not award back pay damages after June 9, 2020.

(Jury Instructions, p. 17.)

Since the award of backpay to an ADA claimant is equitable relief to be determined by the Court and not the jury, this Court is not bound by the jury's implicit finding that Lowe's rejection of CKNA's offer was reasonable. "[I]t is this Court's responsibility to determine as a matter of fact whether" an employee's rejection of an unconditional offer to return to work "was reasonable." *See Equal Employment Opportunity Comm'n v. Bell Gas Inc.*, 2004 WL 7337767, at *4 (D.N.M. July 20, 2004); *Wilcox*, 921 F. Supp. at 843; *Ernst*, 2018 WL 672586, at *11. Furthermore, when ruling on a motion for judgment as a matter of law, the Court can determine whether a "reasonable jury" had a "legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).

When determining whether an employee's decision to reject an unconditional offer was reasonable or not, courts can consider numerous factors. "The decision as to whether a rejection of reinstatement was reasonable depends on a number of different factors, including the following: (1) whether the offer of reinstatement was unconditional and included a return to the same job, at the same wage; (2) whether the claimant would have to waive her discrimination

claim if she accepted the offer; (3) whether hostility caused by the circumstances of the termination was too great; and (4) the totality of the circumstances surrounding the termination and the offer of reinstatement." *See Bell Gas Inc.*, 2004 WL 7337767, at *4 (citing *Smith v. World Ins. Co.*, 38 F.3d 1456, 1464 (8th Cir. 1994)) and (*Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1178 (10th Cir. 2003)).

**D. Lowe's Rejection of CKNA's Unconditional Offer to Return to Work Was Not Reasonable**

As explained below, Lowe's rejection of CKNA's unconditional offer to return to work was unreasonable.

1. <u>Fact that Court Ordered Lowe Be Reinstated Shows Rejection of Offer Was Unreasonable</u>

First, after the trial, this Court ordered that Lowe be reinstated and vacated the jury's award of $50,000 in frontpay. (ECF No. 131). In ordering reinstatement, the Court found as follows:

> The Court now finds that reinstatement is the appropriate remedy, not front pay. *See Gunter v. Bemis Co., Inc.*, 906 F.3d 484, 490 (6th Cir. 2018) ("Reinstatement is the favored remedy and should be granted in the ordinary case.") (internal quotations and citation omitted). <u>Plaintiff is qualified to perform the position from which he was terminated, there is no indication that his returning to work for Defendant would displace another employee, and there was no evidence of exceptional circumstances militating against reinstatement</u>. Accordingly, the jury's front pay award of $50,000 is vacated, and Plaintiff shall be reinstated with the same compensation, benefits, shift, and seniority he was receiving prior to his termination in June 2017.

(ECF No. 131) (emphasis added).

The above emphasized language likewise holds true for the circumstances existing on May 29, 2020 when the unconditional offer was sent to Lowe, through June 8, 2020, the date that Lowe was requested to let CKNA know whether he would be returning to work by. In that time frame, Lowe was qualified to perform the position that he was offered; Lowe would not have

8
Case 1:18-cv-00027   Document 134   Filed 10/05/21   Page 8 of 16 PageID #: 1610

displaced another employee; and there was "no evidence of exceptional circumstances militating against reinstatement."

Since it is reasonable for Lowe to be reinstated in September 2021, it was reasonable for Lowe to have accepted the reinstatement offer in May/June 2020. It is illogical for it to be reasonable for Lowe to be reinstated in September 2021 but meanwhile be unreasonable for Lowe to come back to work for CKNA in June 2020 (especially considering that Lowe was unemployed at the time the unconditional offer was made). The same factors the Court articulated when ordering Lowe back to work applied in June 2020 when Lowe rejected CKNA's offer of reinstatement, making that rejection unreasonable. Nothing changed between May/June 2020 and when this Court ordered reinstatement in September 2021 relative to Lowe's return to work at CKNA.

> 2. Offer of Reinstatement Was Unconditional & Included Return to Work at Same Job at the Same Wage

Second, applying the above-listed factors, Lowe's rejection of CKNA's unconditional offer to return to work was not reasonable. Regarding the first factor, CKNA's offer to Lowe was unconditional and included a return to work in the same job and at the same wage. On May 29, 2020, CKNA, through its Human Resources Manager Mary Beth Wortham, made Lowe an unconditional offer to return to work, which was admitted into evidence as Defendant's Exhibit 69. The letter stated as follows, in pertinent part:

> **Re: Unconditional Offer to Return to Work**
>
> Dear Scott:
>
> I hope you are well. I am writing to extend an unconditional offer for you to return to work for Marelli North America, Inc. f/k/a CalsonicKansei North America, Inc. A position as a regular full-time production technician, the same job classification you occupied before you went out on leave, is available for you to return to work today. If you choose to accept this offer, you will be returned to

work in Lewisburg on the first shift with your seniority reinstated (the time period between June 9, 2017 and your rehire date is not included) and receive the same compensation ($17.20 per hour) and benefits that you were receiving before your termination in June 2017.

Please give me a call so we can put you on the schedule as soon as possible. I can be reached at 931-205-1579.

Please let me know whether you will be accepting this unconditional offer to return to work by June 8, 2020. I look forward to hearing from you.

(Def.'s Ex. 69.)

There is no dispute that this offer was unconditional. An offer is sufficient to terminate backpay if it is not conditional upon an employee's reapplying for his job; if it restores seniority or other benefits accrued by the employee prior to the separation of employment; if the job offered is permanent; if the offer is not contingent on the employee dropping his unfair labor practice claim; and if the employee has sufficient time to accept the offer. *Morvay v. Maghielse Tool & Die Co.*, 708 F.2d 229, 231 (6th Cir. 1983). This unconditional offer to return to work satisfies all of the factors for halting the accrual of backpay as of June 9, 2020. The offer was not contingent upon Lowe reapplying for his position. The offer letter stated that Lowe's seniority would be restored to his last day of employment with CKNA (June 9, 2017) and that he would receive the same compensation and benefits he had prior to his termination of employment. The job offer was also permanent, and in no way was contingent upon him dropping his lawsuit against CKNA. Finally, Lowe had plenty of time to accept the job offer.

### 3. Lowe Did Not Have to Waive His Claims If He Accepted the Offer

Regarding the second factor, Lowe did not have to waive his claims against CKNA if he accepted the offer. The letter did not include any such requirement. (Def.'s Ex. 69.)

4. <u>Whether Hostility Caused by the Circumstances of the Termination Were Too Great</u>

Regarding the third factor, Lowe would not have been returning to an environment where any hostility existed. At the time of his administrative termination for failure to return from a 12-month leave of absence, CKNA classified Lowe as eligible for rehire, as Marcie Tait, CKNA's HR Generalist, testified at trial. After his termination, Lowe sent an e-mail to Tait, who Lowe claimed did not accommodate his disability, and stated as follows: "[A]lso [I] would like to thank you for everything you have done for me. [Y]ou are one of the best human resource personnel that I've encountered at ckna. God bless you and yours." (Def.'s Ex. 41.) Tait also no longer worked at CKNA's Lewisburg facility in May 2020. In addition, his former supervisor, Kevin Monks, no longer worked at CKNA at all in 2020, as Monks confirmed his last day at CKNA was in April 2017. As these facts show, this is not the case where Lowe was being asked to return to work at a worksite where his prior supervisors harassed or discriminated against him. Therefore, his rejection of CKNA's offer could not have been reasonable based on any hostility. *See Price v. UTi Integrated Logistics, LLC*, 2013 WL 5500102, at *5 (E.D. Mo. Oct. 3, 2013) (holding that plaintiff's rejection of unconditional offer was unreasonable as "[t]his is not the case where a plaintiff suffered repeated discrimination or harassment by a supervisor or co-worker and she is being asked to return to work in the same environment"); *Leon v. Echosphere L.L.C.*, 2009 WL 10669393, at *4 (W.D. Tex. 2009) (holding that plaintiff's stated "lack of trust" was not "evidence of a reasonable refusal" when the defendant terminated the supervisor that plaintiff feared).

5. <u>Lowe's Articulated Reasons for Not Accepting the Offer Are Not Reasonable</u>

Finally, regarding the totality of the circumstances factor concerning the termination and the offer of reinstatement, Lowe's articulated reasons for not accepting the offer are not

reasonable as a matter of law. Lowe admitted during trial that he did not accept CKNA's offer. As for his reasons for rejecting the offer, Lowe testified that he did not want to return back to work because if he did, CKNA would be waiting on him to "screw up."[2] In addition, on redirect examination, Lowe called the unconditional offer of employment a "slap in the face." This is despite the fact that as of the date of the unconditional offer to return to work, May 29, 2020, Lowe was unemployed after being laid off from Oliver Farms in March 2020. (Pl.'s Ex. 39, ¶ 14.)

None of the explanations Lowe testified about constitute reasonable reasons for rejecting CKNA's unconditional offer to return to work. His unsupported claim that CKNA would be waiting on him to "screw up" is not reasonable, as numerous cases have held. *See*, *e.g.*, *Price*, 2013 WL 5500102, at *5 ("Subjective fear that an employer may, at some point in the future, . . . unlawfully terminate her employment does not meet the standard of objective reasonableness."); *Frazier v. City of Gadsden*, 2016 WL 2771128, at *15 (N.D. Ala. May 13, 2016) ("Importantly, merely believing that persons with COG would be adverse to Mr. Frazier's instatement does not make that remedy legally infeasible or transform this case into one involving special circumstances warranting front pay."); *Brady v. Nestor*, 496 N.E.2d 148, 151 (Mass. 1986) ("A simple showing that the employee fears further discrimination, without evidence of circumstances making that fear reasonable, does not satisfy the *Ford Motor Co. v. EEOC* rule."). Furthermore, as stated above, Lowe's speculative fear of CKNA waiting on him to "screw up" is not reasonable because he was not returning to an environment where any hostility existed.

Similarly, Lowe's unsupported suspicion of bad faith on CKNA's part – that CKNA would return him to work and wait on him to "screw up" – is also insufficient to show that his

---

[2] Lowe's and Wortham's trial testimony are being transcribed by the court reporter and will be provided to this Court promptly once complete.

rejection of CKNA's offer was reasonable. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 908 (2d. Cir. 1997) (rejecting employee's "wholly unsupported claims" of a ploy to put him back to work under a former supervisor where he could be subject to additional harassment); *Leon*, 2009 WL 10669393, at *4 ("Courts have found that a refusal was unreasonable as a matter of law where the plaintiff only asserted that she refused the offer because she could no longer trust the employer.").

Lowe claiming that he considered the offer to be a "slap in the face" is also not sufficient to show his rejection of the offer was reasonable. The fact that Lowe's feelings were hurt is not enough to show his rejection was reasonable. *See Cowen v. Standard Brands, Inc.*, 572 F. Supp. 1576, 1581 (N.D. Ala. 1983) (holding that plaintiff's "articulated reasons for turning down the offer were that his feelings were hurt and that he did not feel the offer was bona fide" are not "recognized as an excuse in *Ford Motor Co. v. EEOC*").

Lowe's personal reasons for not accepting the job are likewise insufficient. Lowe was unemployed in May 2020 when the unconditional offer of employment was made. (Pl.'s Ex. 39 ¶ 14.) It is unreasonable for Lowe to reject an offer of employment that would pay him $17.20 per hour plus benefits with full seniority dating back to approximately 1990 when he was unemployed and performing odd jobs. Lowe's preference to want to continue to work odd jobs is not sufficient to make his rejection reasonable. *E.E.O.C. v. R.R. Donnelley & Sons Co.*, 2002 WL 1750946, at *3 (N.D. Ill. July 29, 2002) ("[M]erely accepting a new job that, for whatever reason, a claimant prefers does not constitute special circumstances."); *Lemons v. ICM Morg. Corp.*, 941 F.2d 1213 (Table), 1991 WL 164275, at *2 (10th Cir. Aug. 22, 1991) (holding that "personal reasons, standing alone, cannot be the basis for a reasonable rejection").

As the above analysis shows, Lowe's rejection of CKNA's unconditional offer to return to work was unreasonable. As a result, since no "special circumstances" exist, under the Supreme Court's *Ford Motor Company* holding, Lowe's accrual of backpay should stop running on June 9, 2020, the last date to accept CKNA's unconditional offer to return to work.

According to Dr. Baum's report, he estimated Lowe would earn $40,426.45 per year had he continued to work for CKNA. This equates to $777.43 per week ($40,426.45 divided by 52). Between the time period of June 9, 2020 to August 27, 2021, there were 444 days, or 63.43 weeks. 63.43 weeks multiplied by 777.43 equals $49,312.38. Accordingly, Lowe's backpay award should be further reduced by $49,312.38 by terminating the continued accrual of his backpay on June 9, 2020.

## IV. CONCLUSION

The jury's $176,628 backpay award should be reduced in two respects. First, the jury's backpay number awarded Lowe backpay for an eight week period in which he would not have been working for CKNA because CKNA's Lewisburg plant was shut down due to COVID. As a result, the jury's backpay award put Lowe in a better position than he would have been if he had not been terminated, which is not the ADA's goal. Accordingly, after subtracting these eight weeks of work from Lowe's backpay period, Lowe's backpay award should be reduced by $6,219.44.

Second, the $176,628 backpay award included the backpay period of June 9, 2017 through August 27, 2021. (Pl.'s Ex. 39, ¶ 28.) As explained above, CKNA made Lowe an unconditional offer to return to work, which Lowe rejected. No special circumstances exist to avoid *Ford Motor Company's* rule of tolling the accrual of backpay after the rejection of an unconditional offer. Therefore, Lowe's backpay should have stopped accruing on June 9, 2020,

the date CKNA's offer to him expired. The jury's award awarded him backpay from June 9, 2020 through August 27, 2021, the final date of trial. Because Lowe unreasonably rejected CKNA's unconditional offer to return to work, the jury's award of backpay should be further reduced by $49,312.38 as a result of the backpay period ending on June 9, 2020.

Accordingly, this Court should grant CKNA's Motion and reduce the jury's backpay award from $176,628 to $121,096.18.

Respectfully submitted,

*s/ Matthew C. Lonergan*
Matthew C. Lonergan (BPR No. 10798)
John P. Rodgers (BPR No. 30324)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
T: (615) 252-2322
F: (615) 252-6322
mlonergan@bradley.com
jrodgers@bradley.com

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2021 a true and exact copy of the foregoing has been served via the Court's electronic case filing system upon:

Heather Moore Collins
Anne Hunter
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
(615) 724-1996
heather@collinshunter.com
anne@collinshunter.com

*Attorneys for Plaintiff*

            *s/ Matthew C. Lonergan*
            Matthew C. Lonergan